UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARCUS SANDERS<br><br>Plaintiff,<br>VS.<br><br>MARQUETTE TRANSPORTATION COMPANY GULF INLAND, L.L.C.<br><br>Defendant. | CIVIL ACTION<br><br>NO. 2:19-cv-12046<br><br>SECTION T (4)<br><br>JUDGE GREG GERARD GUIDRY<br><br>MAGISTRATE JUDGE KAREN WELLS ROBY |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S *MOTION IN LIMINE* TO EXCLUDE THE PROFFERED TESTIMONY OF PLAINTIFF'S EXPERT ECONOMIST**

Defendant's Motion in Limine To Exclude the Proffered Testimony of Plaintiff's Expert Economist (Doc. 14) should be denied because:

- Dr. McCoin's opinions regarding Plaintiff's future earning capacity are grounded in commonly accepted methodology, sufficient facts and data, and reasonable assumptions.
- Dr. McCoin's opinions regarding societal wage growth are relevant, reliable, and based on the teachings of *Pfeifer* and *Culver II*.
- Although they arrive at different figures, Dr. McCoin's wage growth opinion is in line with the wage growth opinion of Defendant's own expert economist.
- Dr. McCoin's opinion concerning benefits is well founded and nearly identical to the opinion of Defendant's expert.
- Defendant misunderstands Dr. McCoin's opinion concerning household services. He offers no opinion concerning the amount, if any, of loss of household services. Instead, based on data that other courts have accepted, he provides the formula through which the jury can do its own calculation.

At best, all of Defendant's objections to Dr. McCoin's testimony go solely to its weight, not its admissibility and therefore, its motion should be denied in its entirety.

## Exhibits

Exhibit A: Curriculum Vitae of Dr. Kenneth McCoin

Exhibit B: Transcript of statement of Dr. McCoin and Declaration of Dr. McCoin and Jeff Seely[1]

Exhibit C: United States Department of Labor Bulletin 20-0378

Exhibit D: Spreadsheet concerning wage growth calculation

Exhibit E: Dr. McCoin's report

Exhibit F: Dr. Ken Boudreaux's report

## Factual Background

This is a Jones Act case. Plaintiff disclosed Dr. Kenneth McCoin as an expert to perform an appraisal of Plaintiff's earning capacity. Although Dr. McCoin's expertise is not challenged, Dr. McCoin has extensive experience in the fields of economics and finance.[2] He holds a PhD in economics. He served as a professor in economics at multiple universities for 36 years.[3] Dr. McCoin's highly-respected reputation of presenting a credible economic analysis of wage loss spans decades.[4]

---

[1] On April 3, 2020, counsel for Plaintiff, Jeff Seely, took a videoconference statement of Dr. McCoin through https://zoom.us/ because he has not been deposed. Mr. Seely had a non-certified transcription of the recording prepared. Dr. McCoin and Mr. Seely signed declarations under oath attesting to the accuracy of the transcription. The actual video recording is available to defense counsel upon request.

[2] Exhibit A.

[3] Exhibit A; Exhibit B at 8 ¶ 3.

[4] *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co., Ltd.*, 324 F. Supp. 3d 808, 829 (E.D. La. 2018) ("The Court finds that Dr. McCoin's methodology is credible."); *Thier v. Lykes Bros., Inc.*, 900 F. Supp. 2d 864, 874 (S.D. Tex . 1995) ("The Defendants presented as their expert economist, Dr. Kenneth McCoin, who is well known to and highly respected by this Court and frequently testifies regarding economic issues in civil litigation.").

## Argument

Defendant challenges three of Dr. McCoin's opinions: (1) societal wage growth, (2) fringe benefits, and (3) loss of household services. Each will be addressed in turn.

### A. Dr. McCoin's societal wage growth opinion is reliable.

1. The Supreme Court and the Fifth Circuit hold that wages should be increased by societal wage growth.

Dr. McCoin's opinions utilize the "below-market discount rate" method of determining Plaintiff's earning capacity.[5] This method has long been the accepted and mandated method in the Fifth Circuit since *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) (en banc) (*Culver II*). *Culver II* established, based on *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983) (*Pfeifer*), that "calculation of the lost future income stream begins with the gross earnings of the injured party at the time of the injury".[6] *Pfeifer* and *Culver II* recognized that even in a non-inflationary economy, earnings of a worker "tend to inflate" from the operation of individual (such as promotions) and societal factors (such as productivity growth).[7] Case law instructs that both factors are mutually exclusive[8] and both "should be considered to reach the first stage in calculating an appropriate award, an estimate of what the lost stream of income would have been as a series of after-tax payments, one in each year of the worker's expected remaining career."[9]

---

[5] Exhibit E.

[6] *Culver*, 722 F.2d at 117; *see also Pfeifer*, 462 U.S. at 534 ("The most obvious and most appropriate place to begin is with the worker's annual wage at the time of injury.").

[7] *Pfeifer*, 462 U.S. at 535; *Culver*, 722 F.2d at 117 ("Even in a non-inflationary economy, earnings of a worker 'tend to inflate' from the operation of a number of factors, 'some linked to the specific individual and some linked to broader societal forces.'").

[8] *Pfeifer*, 462 U.S. at 535 n.13 (noting that the term societal factors "will be used to encompass all forces that tend to inflate a worker's wage without regard to the worker's individual characteristics").

[9] *Culver*, 722 F.2d at 117 (internal quotation marks and emphasis omitted).

Courts in this District continue to apply *Culver II* and recognize that gross earnings at the time of the injury should be increased based on societal wage growth.[10]

2. Dr. McCoin's calculation concerning societal wage growth is relevant and reliable.

Dr. McCoin's report, in accordance with *Pfeifer* and *Culver II*, increase Plaintiff's earnings at the time of the injury by a societal wage growth factor of .8 percent. Dr. McCoin will opine that real wages have increased over time by societal/productivity forces that are unrelated to individualized factors that may cause a person's wage to increase.

> It's due to societal factors, separate and apart from the person. These are factors that give a rise to wages with no consideration of the person themselves. It comes about simply because of increased productivity on the part of the worker through a better educated workforce, through a healthier workforce, more technological tools that are available to them. All of this redounds to a slight increase in real wages over time. It doesn't happen each and every year, but over time a broad span of time, wages increase.[11]

He notes that *Culver II*, *Pfeiffer*, and economic texts acknowledge the reality that real wages have grown over time for reasons other than individualized factors.[12]

Consistent with *Madore's* recognition that it is appropriate to rely upon historical government data in calculating wage growth,[13] Dr. McCoin relied upon historical wage data over

---

[10] *Barrios v. Centaur LLC*, 2019 U.S. Dist. LEXIS 16990, at *17-18 (E.D. La. 2019); *Grab v. Traylor Bros*., 2011 U.S. Dist. LEXIS 113429, at *39 (E.D. La. 2011) (where the expert utilized a zero to 4.5 percent growth rate, the court stated that the expert "applied a reasonable growth rate based on past statistics in salary growth"); *see also Knight v. Texaco, Inc.*, 786 F.2d 1296, 1300 (5th Cir. 1986) (stating that the admission of evidence concerning a 1.5 percent productivity wage growth rate was "in accordance with" *Culver II*). Louisiana state courts hold that societal wage growth should be added to earnings. *See, e.g., Labat v. Mallard Bay Drilling Co., Inc.*, 806 So. 2d 917, 923 (La. App. 4th Cir.), *writ denied*, 817 So.2d 803 (La. 2002).

[11] Exhibit B at 1 ¶¶ 5-6 ("In other words, there's no consideration for any merit increases, any promotions, nothing of that nature.").

[12] *Id.*

[13] *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984) (noting that the district court properly computed the likelihood and amount of Madore's future income growth by relying upon historical government data concerning wages).

the last 50 years from the Department of Labor that is applicable to a person in Plaintiff's job and is relied upon by economists in Dr. McCoin's field.[14] That data is summarized in United States Department of Labor Bulletin 20-0378,[15] which is referenced in Dr. McCoin's report,[16] and can be downloaded from its website.[17] Dr. McCoin presented that data in a detailed spreadsheet that he prepared.[18] Based upon the year-by-year changes in the historical real wage growth rate, Dr. McCoin calculated that the long-term measure of societal wage growth is about 0.8%.[19]

> Dr. Kenneth McCoin: Well, this is the data collected from 1953 through 2018, and that's the back part of it as it came off the website. And it has a particular distinguishing variable. For example, hourly compensation is ID's as PRS85006103. And with a little effort you can isolate that document if you had to, or otherwise just go to the basic listing. Anyway, that data is displayed in the first three columns actually, it's converted to a percent change. We convert that in turn to an index, where in 1953 it's one for example, and by the time you get to 2018 that number has grown to 20.7. And when we deflate it, that compensation number went from 1.0 to 2.2 over 50 something years, all right? So that's a long-term measure of labor productivity. And it's about 0.8% in any time period you want to choose. It's going to measure close to 0.8%.[20]

[14] Exhibit B (Declaration of Dr. Kenneth McCoin); *id* at 3 ¶¶ 2-8 (Statement).
[15] Exhibit C.
[16] Exhibit E.
[17] Exhibit B at 3 ¶¶ 2-6 ("Now that particular series there is tethered to measurement of labor productivity, both in a unit labor cost, productivity. It's part of that whole constellation of calculations on labor productivity.").
[18] Exhibit D; *see also* Exhibit B at 3 ¶ 7.
[19] *Id.* In his statement, Dr. McCoin focused on a spreadsheet that he prepared that contained data through 2018. Because he had also provided a spreadsheet with data through 2019, counsel asked him if he was referencing the 2019 spreadsheet. Exhibit B at 4 ¶¶ 1-3. He responded and said that if you use the data through either 2018 or 2019, the historical societal wage growth remains .8 percent. In reality, the figure is slightly higher than that amount. He rounded down, which yielded a more conservative figure. *Id.* at 3 ¶ 6 ("Compensation including inflation is 3.8%. Yields on investments, 4.1%. *And when you deflate it, it becomes 0.825. I just rounded it down to .8%*, and the interest rate's a 1.1%.") (emphasis added). Exhibit D includes both the 2018 and 2019 spreadsheets.
[20] Exhibit B at 3 ¶ 8.

Dr. McCoin opines that societal wage growth will continue to average .8 percent over time. That opinion is reliable because it is based on 60 years of data. If anything, he believes that it is likely going to increase.

> Dr. Kenneth McCoin: Well, it's been our national experience. Here it is sixty-something years. I can't perceive it changing. You could probably make an argument it's going to increase.[21]

Ultimately, Dr. McCoin finds it "staggering" that there is a suggestion that real wages growth have not increased over time.[22] Historical real wage growth is recognized in standard economics textbooks that he utilized in his teaching career.[23] "America would not be America today if we did not have that."[24] The notion that there has not been real wage growth "runs against our national history."[25]

Courts in this District have found Dr. McCoin's analysis to be credible.[26]

3. Defendant's expert calculated wage growth too.

Defendant retained Dr. Ken Boudreaux as its retained-expert economist.[27] His report offers no specific criticism of Dr. McCoin's societal wage growth assumptions or calculation. Like Dr. McCoin, Dr. Boudreaux does a wage growth calculation, although he reaches a different calculation.[28] Unlike Dr. McCoin's report's showing that it is relying upon specific government

---

[21] *Id.* at 3 ¶¶ 3-4.
[22] *Id.* at 8 ¶ 1.
[23] *Id.* at 8 ¶ 4.
[24] *Id.* at 8 ¶ 3.
[25] *Id.* at 8 ¶ 1 ("Well, I think the notion that workers won't receive wage growth, periodic but societal wage increases, is staggering, and this runs against our national history.").
[26] *See, e.g., Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co., Ltd.*, 324 F. Supp. 3d 808, 829 (E.D. La. 2018) ("The Court finds that Dr. McCoin's methodology is credible.").
[27] Exhibit F.
[28] Exhibit F; *see also* Exhibit B at 2 ¶ 6.

data concerning his wage growth calculation, Dr. Boudreaux's report does not identify what he is relying on.[29]

To Dr. Boudreaux's credit, he has been including a societal wage growth calculation in his reports since before *Pfeifer* and *Culver II*.[30] His estimates have varied over time. It was 3 to 6 percent in the 1980s, 2.5 to 5.5 percent in the 1990s,[31] and -1 to 1 percent now.[32]

To be sure, Dr. Boudreaux upper end of his current range – 1 percent – exceeds Dr. McCoin's .8 percent opinion.

4. <u>The ruling in *Rhodes* is both irrelevant and not surprising</u>.

Defendant's motion focuses on a ruling from United States District Judge Susie Morgan in *Rhodes v. Genesis Marine, LLC of Delaware* in which the court excluded Dr. McCoin's opinion concerning societal wage growth. There is no written opinion beyond a docket entry memorializing that the opinion was excluded, so we do not know the court's reasoning.

The court's ruling is not surprising because the plaintiff's response:[33]

- Only quoted from Dr. McCoin's report and his citation to the Department of Labor bulletin.
- It did not attach a declaration, deposition, or statement from Dr. McCoin in which he explained why he relied upon the wage data and how his opinion was reliable.
- It did not cite *Pfeifer* or *Culver II* and communicate to the court that binding precedent confirms that an expert can increase gross wages by societal wage growth.

---

[29] Exhibit F; *see also* Exhibit B at 2 ¶ 7.
[30] *Domangue v. E. Airlines, Inc.*, 542 F. Supp. 643, 649 (E.D. La. 1982) ("Dr. Boudreaux's report sets forth a range of estimates varying according to which productivity factor is used, a 3% or 6% factor or some other rate which would result in the deceased's earnings as of the time of trial being $ 50,000.00, and whether the children are supported through age eighteen or twenty-one.").
[31] *Morton v. Ray*, 611 So. 2d 841, 846 (La. Ct. App. 1992).
[32] Exhibit F.
[33] Memorandum in Opposition to Genesis Marine, LLC's Motion in Limine (Doc. 86); *Rhodes v. Genesis Marine, LLC of Delaware*; 2:18-cv-00746-SM-JCW (E.D. La. June 18, 2019) (Morgan, J.).

- It did not cite *Madore* and point out that it is appropriate for an expert to rely upon historical government data in doing a wage growth calculation.

- It did not present an argument about the debatable hypocrisy of Defendant's argument, considering that Dr. Boudreaux, who was retained by the same counsel in *Rhodes*, does a wage growth calculation and the upper end of his range exceeds Dr. McCoin's .8 percent opinion.[34]

The ruling bears no relevance to this case because contrary to the record in *Rhodes*, this response fully supports and explains Dr. McCoin's opinion and its reliability. At best, Defendant's criticism goes to the weight of Dr. McCoin's testimony. His opinion can be challenged through cross examination.

5. Defendant's criticism go to the weight of Dr. McCoin's testimony and his opinions can be challenged through cross examination and Defendant's expert.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[35] *Daubert* makes clear that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[36]

It is beyond reasonable dispute, based on *Pfeifer* and *Culver II*, that an expert can increase earnings at the time of the injury by societal wage growth. Although such an argument lacks credibility, at most, Defendant's only criticism could be that the documents or data that Dr. McCoin relied on do not provide an adequate foundation for his opinion. Under *Daubert*, such an

---

[34] Although Dr. Boudreaux's report is not in the court's record, he is referenced as a witness on defendant's exhibit list. Supplemental Witness List (Doc. 80); *Rhodes v. Genesis Marine, LLC of Delaware*; 2:18-cv-00746-SM-JCW (E.D. La. June 5, 2019) (Morgan, J.).
[35] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987)); *see also Fick v. Exxon Mobil Corp.*, 2016 U.S. Dist. LEXIS 194806, at *5 (E.D. La. 2016) (Morgan, J.) (same and also citing *Culver II's* reference that wages can be increased by societal wage growth).
[36] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

argument goes to the weight of Dr. McCoin's testimony. His opinions can be challenged through cross examination or Defendant's own expert.[37]

**B. Dr. McCoin's calculation of fringe benefits is relevant and reliable and nearly identical to Dr. Boudreaux's opinion.**

*Culver II* and *Pfeifer* state that fringe benefits should be added to gross earnings.[38] Based on that legal foundation, Dr. McCoin included the value of fringe benefits in his calculation. Dr. Boudreaux's acknowledges that fringe benefits can be added to gross earnings. He identified a 14.1 percent value versus Dr. McCoin's 17.5 percent value.[39] He also recognizes that data from the U.S. Bureau of Labor Statistics properly identifies the value of fringe benefits.[40]

Dr. McCoin relied upon such data as the foundation of his opinion.[41] Specifically, he relied upon USDL19-0449, which is referenced in his report. It is relied upon by expert in his field concerning someone in Plaintiff's position.[42] The data concerns full-time workers. The 17.5 percent figure is a blended average of workers who do not receive benefits, receive partial benefits,

---

[37] *Chrastecky v. C. R. Bard, Inc.*, 2020 U.S. Dist. LEXIS 25837, at *41-42 (W.D. Tex. 2020) ("Bard next argues that Dr. McCoin's opinions and testimony regarding loss of earning capacity are unsupported and unreliable because (1) they are based on assumptions that are not supported by the factual record; (2) Dr. McCoin erroneously assumed that Plaintiff would have continued to work as a vice-president after the company she owned with her husband was sold in 2017; (3) his opinion as to the real rate of interest or discount rate he applies in unreliable; (4) his opinions regarding Plaintiff's past and future benefits are unreliable; and (5) he has failed to consider the impact of income taxes for his opinions. All of these objections go to the weight of Dr. McCoin's testimony, not to its admissibility. Bard is free to bring up all of these arguments during cross-examination."); *Murphy v. Gallery Model Homes, Inc.*, 2005 U.S. Dist. LEXIS 45033, at *2 (S.D. Tex. 2005) (denying a motion to strike Dr. McCoin and stating that the "Court finds that each of the complaints goes to the weight to be given to McCoin's testimony by the jury, rather than the admissibility of his testimony.").

[38] *Pfeifer*, 462 U.S. at 534; *Culver*, 722 F.2d at 117.

[39] Exhibit E at 1; Exhibit F at 3.

[40] Exhibit F at 3 ("Periodic fringe benefit surveys of the U.S. Bureau of Labor Statistics report that most jobs in which an individual works both full time and steadily provide the fringe benefits of greatest economic importance (such as medical insurance).").

[41] Exhibit E at 1.

[42] Exhibit B (Declaration of Dr. Ken McCoin).

and receive full benefits.[43] The aim is to calculate the likelihood that a person would actually receive fringe benefits and place a value on the benefits in relation to gross earnings.[44] Dr. McCoin also assumes that Plaintiff will receive benefits at his post-injury job.[45]

His opinion is reliable whether or not the Plaintiff was receiving benefits from the Defendant because the calculation is a blended average and because the majority of jobs provide benefits.

> Dr. Ken McCoin: Well, I think in the long run he's probably going to be his dad's going to not provide him with benefits. And he's going to be on his own, and he's going to come face to face with the reality he's not immortal. And he's going to need some health insurance, and then gee it'd be nice to have a retirement plan. That's really what we're looking at, and if we take into account the likelihood that he would get the fringe benefits. But in this labor market there's a lot of job changes going on, that people aren't tethered to one employer for the whole of their life. They go from job to job, et cetera, but I think that's a better measure to capture is fringe benefits.[46]

Case law confirms that it is appropriate to value fringe benefits as a percentage of gross earnings based on government data as Dr. McCoin and Dr. Boudreaux do.[47] Plaintiff points out that United States District Judge Susie Morgan *did not* exclude Dr. McCoin's opinion concerning loss of fringe benefits in *Rhodes*.[48]

---

[43] Exhibit B at 6 ¶ 7.
[44] *Id.*
[45] *Id.* at 7 ¶ 1.
[46] *Id.* at 7 ¶¶ 2-4.
[47] *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co., Ltd*., 324 F. Supp. 3d 808, 829 (E.D. La. 2018) (accepting Dr. McCoin's valuation of fringe benefits as a percentage of gross earnings based on government data and finding that his methodology is "credible"); *see also Frost v. Islamic Republic of Iran*, 2019 U.S. Dist. LEXIS 179750, at *85 (D.C. Cir. 2019) ("Dr. Koch computed the average value of fringe benefits as 30.4% of salary, which is derived from data from the Bureau of Labor Statistics for average employee compensation costs for civilian workers and the corresponding benefit cost component of that amount. Again, this approach reasonably applies an average factor derived from data covering the general labor force in the United States.").
[48] Although it does not matter if Plaintiff was receiving benefits at the time of the accident, if that fact is relevant, it is not clear what benefits were available to Plaintiff and the benefits he received. Plaintiff is going to seek that information from Defendant and ask it to update its disclosures. To

### C. Dr. McCoin's loss of household services is reliable.

Defendant misunderstands Dr. McCoin's opinion concerning household services. Dr. McCoin is not opining that Plaintiff will lose household services. As he makes clear in his statement, that conclusion is left to the jury.[49] Dr. McCoin relies upon government data that identifies the numbers of hours that people perform household services.[50] Specifically, he relies upon the Department of Labor study, "Measuring time spent in unpaid house work: results from the American Time Use Survey."[51] It is a comprehensive study that researched household services.[52] The study is "commonly relied upon by economists when calculating the economic value of lost household services."[53]

The calculation that Dr. McCoin does is merely a benchmark that would allow the jury to award loss of household services if there is evidence of loss of household services. Dr. McCoin, *for comparative purposes only*, does a calculation if there was a 20 percent loss. If the jury concludes that there is a 100% loss, it would simply multiple Dr. McCoin's calculation by five.[54] If the jury believed that there was a 10 percent loss, it would necessarily divide Dr. McCoin's

---

the extent that information is needed, Dr. McCoin can amend his report just as Dr. Boudreaux indicated he would do upon the receipt of additional information concerning fringe benefits. Whatever the case, the table following Dr. McCoin's report has a specific column that calculates the value of fringe benefits. Exhibit B at 7 ¶ 5; Exhibit E (Table). In the event that there is no foundation for that column, the jury can simply do its own calculation and not award that amount.

[49] Exhibit B at 5 ¶ 5 to 6 ¶ 3.

[50] *Id.* at 5 ¶ 6.

[51] Exhibit E.

[52] Exhibit B at 5 ¶ 6.

[53] *Ashford v. Wal-Mart Stores, LP*, 2013 U.S. Dist. LEXIS 5845, at *14 (S.D. Miss. 2013) (citing Thomas R. Ireland, *Uses of the American Time Use Survey to Measure Household Services: What Works and Does Not Work*, 8 J. Legal Econ. 61 (Oct. 2011)); see also Exhibit B (Declaration of Dr. Ken McCoin). A court can even take judicial notice of government studies concerning the value of loss of household services. *McAsey v. United States Dep't of Navy*, 201 F. Supp. 2d 1081, 1100 (N.D. Cal. 2002).

[54] *Id.* at 6 ¶ 1.

calculation by two. Obviously, if there is no evidence of loss of household services, Dr. McCoin will tell the jury to award nothing.[55]

Courts allow an expert to rely upon government data concerning household services and allow the fact finder to identify the percentage of loss of household services and the value of that loss.[56]

## **Amending the Report if the Court Grants Defendant's Motion**

As was done in *Rhodes*, in the event that the Court grants all or part of Defendant's motion, Plaintiff seeks leave to allow Dr. McCoin to update his report reflecting the Court's ruling.

## **Conclusion**

Plaintiff respectfully requests that the Court deny Defendant's motion.

---

[55] *Id.* at 6 ¶ 2.
[56] *Semien v. Parker Drilling Offshore USA LLC*, 179 F. Supp. 3d 687, 722 (W.D. La. 2016) (noting that the "evidence and testimony presented at trial suggest that Mr. Semien can perform approximately one third of the household services contemplated by the Bureau of Labor Statistics Table").

Respectfully submitted,

**GORDON, ELIAS & SEELY, L.L.P.**

By: /s/ Jeff Seely
Jeff Seely *(admitted pro hac vice)*
SBN: 24033172
1811 Bering Drive, Suite 300
Houston, Texas 77057
(713) 668-9999 - Telephone
(713) 668-1980 – Telecopier
E-service: eservice@geslawfirm.com

**OF COUNSEL:**

Steven J. Gordon
TXSBN: 08207980
Louisiana Bar No. 24109
**GORDON, ELIAS & SEELY, L.L.P.**
1811 Bering Drive, Suite 300
Houston, Texas 77057
(713) 668-9999 - Telephone
(713) 668-1980 – Telecopier

**ATTORNEYS FOR PLAINTIFF MARCUS SANDERS**

## <u>Certificate of Service</u>

I hereby certify that on April 7, 2020, the foregoing document was served on the following counsel of record:

Evans Martin McLeod
Justin C. Warner
Phelps Dunbar
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
***Counsel for Defendant, Marquette Transportation Company Gulf Inland, LLC***

/s/ Jeff Seely
**Jeff Seely**